UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. JRR-24-1908 |
| | * | |
| **DARYL M. DAVIS,** | | |
| | * | |
| Defendant. | | |
| | * | |

**REPORT AND RECOMMENDATION**

On July 1, 2024, Plaintiff Securities and Exchange Commission (the Commission) initiated the above-captioned action seeking entry of judgment pursuant to Section 209(d) of the Investment Advisers Act of 1940 (Advisers Act), 15 U.S.C. § 80b-9(d), and Section 42(d) of the Investment Company Act of 1940 (Investment Company Act), 15 U.S.C. § 80a-41(d), to enforce compliance by Defendant Daryl M. Davis with an administrative order the Commission issued in 2019.  ECF No. 1.  Pending before the Court is the Commission's motion for default judgment against Mr. Davis.  ECF No. 10.  On December 2, 2025, pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302 (D. Md. Dec. 1, 2025), the Honorable Julie R. Rubin referred this case to the undersigned for a report and recommendation on the pending motion.  ECF No. 15.  The motion is fully briefed.[1]  ECF Nos. 10, 17–18.  No hearing is necessary.  Local Rule 105.6.  For the reasons set forth below, the undersigned respectfully recommends that the motion be granted in part and denied in part, and that the Court assess a third-tier civil money penalty against Mr. Davis in the amount of $184,767.

---

[1] Defendant Daryl M. Davis did not file a response in opposition to either the initial motion or supplement filed by Plaintiff Securities and Exchange Commission and the time to do so has expired.  ECF Nos. 10, 16–17; Local Rule 105.2.a (D. Md. Dec. 1, 2025).

I.  **BACKGROUND**

    A.  **Relevant Factual Allegations[2]**

Mr. Davis was the sole owner and founder of the now defunct The Parrish Group, LLC (Parrish Group), an investment advising firm that Mr. Davis managed and operated. ECF No. 1 ¶ 7. Mr. Davis drafted a brochure that described investment services purportedly offered by Parrish Group. *Id.* at ¶ 8. The brochure misrepresented the amount of assets Parrish Group managed, the number of employees, the identity of senior leadership, and the identity of purported clients. *Id.* at ¶¶ 9–11. From at least July 2016 to November 2017, Mr. Davis, or a Parrish Group representative acting at his direction, used the brochure at least 80 times to advertise investment advisory services to prospective clients. *Id.* at ¶ 8. Mr. Davis also sent emails that falsely represented that Parrish Group managed $1.4 billion in assets. *Id.* at ¶ 12.

    B.  **Additional Factual Background**

On May 1, 2019, Mr. Davis agreed to an offer of settlement, which he submitted to the Commission for the purpose of settling anticipated public administrative and cease-and-desist proceedings against him and Parrish Group. ECF No. 18 at 1, 6;[3] *see also* ECF No. 1 ¶¶ 1, 14 (referencing the offer of settlement). The Commission accepted the settlement terms, which were incorporated into an administrative order the Commission issued on July 2, 2019 (the Commission Order). ECF No. 10-3; *see also* ECF No. 1 ¶¶ 14–15 (discussing the Commission Order). The Commission Order instituted administrative and cease-and-desist proceedings against Mr. Davis and Parrish Group pursuant to Section 203 of the Advisers Act and Section

---

    [2] The facts in this section are drawn from allegations in the Complaint (ECF No. 1), which are deemed admitted after entry of default (ECF No. 7). *Securities & Exch. Comm'n. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005); *Securities & Exch. Comm'n v. Moody*, No. 3:18-CV-442 (JAG), 2019 WL 2494421, at *1 (E.D. Va. June 13, 2019) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

    [3] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files system (CM/ECF) printed at the top of the cited document.

9(b) of the Investment Company Act, made findings, and imposed remedial sanctions and a cease-and-desist order. ECF No. 10-3 at 1; 15 U.S.C. §§ 80b-3 and 80a-9. The Commission Order determined that Mr. Davis materially misrepresented Parrish Group's investment advisory business by repeatedly misleading prospective clients about Parrish Group's assets under management, clients, number and identity of employees, and registration status with the Commission, in violation of Sections 206(1) and 206(2) of the Advisers Act. ECF No. 10-3 at 2; 15 U.S.C. §§ 80b-6(1)-(2). Among other things, the Commission Order directed Mr. Davis and Parrish Group to pay a civil monetary penalty in the amount of $184,767 within 10 days of entry of the Commission Order, plus interest if payment was not timely made, and included various forms of injunctive relief. ECF No. 10-3 at 3–4. Mr. Davis did not seek review of the Commission Order and has not made the required payment. ECF No. 1 ¶¶ 16–17.

    **C.**    **Relevant Procedural History**

On July 1, 2024, the Commission initiated this action by filing a Complaint against Mr. Davis. ECF No. 1. Mr. Davis did not file a responsive pleading. On August 25, 2025, Judge Rubin ordered the Commission to show cause as to why the instant action should not be dismissed for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 103.8.b. ECF No. 5. Thereafter, the Commission moved for the Clerk's Entry of Default, which was entered on September 11, 2025. ECF Nos. 6–8. On September 26, 2025, Mr. Davis moved to vacate the Clerk's Entry of Default on the grounds of improper service. ECF No. 11. On September 29, 2025, the Commission filed the instant motion. ECF No. 10. On November 4, 2025, the Court denied Mr. Davis's motion to vacate the entry of default, finding that he had been properly served, and granted Mr. Davis 21 days to respond to the Commission's motion for default judgment. ECF No. 14. On December 2, 2025, Judge Rubin referred the pending motion to the undersigned. ECF No. 15. The undersigned determined that the Commission's motion and supporting memorandum of law did not provide an adequate basis upon which to make

3

recommendations concerning the merits of the motion and requested relief. ECF No. 16. Accordingly, on December 16, 2025, the undersigned issued a Memorandum Order that permitted the Commission to supplement its pending motion and afforded Mr. Davis a corresponding opportunity to respond on or before January 27, 2026. *Id.* The Commission supplemented its motion on January 2, 2025. ECF Nos. 17–18. As noted, Mr. Davis did not file a response to either the Commission's motion or supplement.

## II.   DISCUSSION

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Commission seeks entry of default judgment against Mr. Davis that requires him to pay a civil penalty in the amount of $184,767, plus outstanding interest pursuant to 31 U.S.C. § 3717, post-judgment interest, and injunctive relief.[4] ECF Nos. 10 at 1, 4–5; 17 at 8. The applicable standard of review and the issues of liability and available relief are addressed in turn below.

### A.   Standard of Review

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. "Although the United States Court of Appeals for the Fourth Circuit has a strong policy that cases be decided on the merits, default judgment is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (internal quotation marks and citations omitted). Accordingly, Rule 55 provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). When the

---

[4] The Commission also seeks relief pursuant to Maryland Rule 2-613(f). ECF No. 10-1 at 1. In this forum, the Federal Rules of Civil Procedure, together with the Court's Local Rules, govern questions of civil procedure. Fed. R. Civ. P. 1.

party's claim is not for "a sum certain" or "a sum that can be made certain by computation," the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b).

When deciding a motion for default judgment, "the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Securities & Exch. Comm'n* v. *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005). With respect to liability, the Court must consider whether the well-pleaded allegations state a plausible claim. *Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*, Civil Action No. CCB-20-2479, 2024 WL 1132092, at *3 (D. Md. Mar. 15, 2024) (Coulson, J.) (noting that "the Court must consider whether the unchallenged facts constitute a legitimate cause of action because a party in default does not admit mere conclusions of law"); *Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Adm'rs, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020) (observing that "the pleading standards announced in *Ashcroft* v. *Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007), [apply] in the context of default judgments"). Therefore, a court reviewing a motion for default judgement under Rule 55(b) accepts the well-pleaded allegations as true and then determines whether the allegations support the relief sought. *Securities & Exch. Comm'n* v. *Moody*, No. 3:18-CV-442 (JAG), 2019 WL 2494421, at *1 (E.D. Va. June 13, 2019).

If the Court determines that the well-pleaded allegations are sufficient to establish liability, it must then determine the appropriate amount of damages or other relief. *Frozen Wheels, LLC*, 2024 WL 1132092, at *3; *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593. Rule 54 provides that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Damages are therefore "circumscribed by that which is requested in the complaint." *Select Specialty Hosp. - Quad Cities, Inc.*, 2020 WL 4569521, at *3. When assessing damages or other relief, the Court cannot accept as true the well-pled allegations but must instead make an independent determination that is "supported by

evidence introduced either at a hearing or by affidavit or other records." *Id.*; *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593; *see also Frozen Wheels, LLC*, 2024 WL 1132092, at *3 ("A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence."). The Court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), when evaluating damages, although an evidentiary hearing is not required in every circumstance, *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases). The damages request must be supported by evidence introduced at the hearing, by affidavit, or by other records. *United States* v. *Bob Bakers Golden Services Inc.*, Civil Action No. PX-22-191, 2023 WL 3304897, at *2 (D. Md. May 8, 2023).[5]

---

[5] In its Complaint and supplemental default judgment filing, the Commission relies on *Securities and Exchange Commission* v. *McCarthy* and related authority for the assertion that, "[b]y the time a[n] application is filed by the Commission, the time and opportunity for adjudicating the merits of the claim have been exhausted; all that is left to do is enforce the order." 322 F.3d 650, 658 (9th Cir. 2003); ECF Nos. 1 ¶ 3; 17 at 3 n.13–15. At issue in *McCarthy* was whether Section 21(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(e), authorized the use of summary proceedings to enforce Commission orders following the filing of an "application" in federal district court. *Id*. at 654-658. In *McCarthy*, the Court took care to distinguish between an "action" and an "application," explaining that an "action" is "the formal and ordinary means by which parties seek legal and/or equitable relief before a court of law through the filing of a formal complaint, triggering the full array of legal, procedural, and evidentiary rules governing the process by which a court adjudicates the merits of a dispute." *Id.* at 657. On the other hand, an "application" is "merely a 'motion,'" which is a "written or oral application requesting a court to make a specified ruling or order." *Id.* (internal quotation marks and citation omitted). Ultimately, the *McCarthy* Court concluded that summary proceedings were available under Section 21(e). *Id.* at 655-658. In so holding, the Court observed that "Appellants have received four different opportunities to litigate the merits of this case," and therefore it "would be redundant and a waste of judicial resources to provide Appellants with a fifth round of litigation on the substantive issues relating to this action." *Id.* at 658.

Here, there has been no similar litigation of the merits, as Mr. Davis made an offer of settlement, which the Commission accepted and memorialized in the Commission Order at issue. ECF Nos. 10-3; 18. Further, the Commission initiated this action under different statutes than those at issue in *McCarthy* and the other cases the Commission cites. ECF No. 1 at 1, 4–5. The enforcement provisions of the statutes at issue here authorize the Commission to file "an action" in the proper United States District Court for a civil penalty, injunctive relief, a cease-and-desist order, and other relief. 15 U.S.C. §§ 80a-41(d)-(e), 80b-9(d)-(e). Accordingly, the Commission initiated this action by filing a complaint and subsequently moved for a default judgment

Entry of default judgment is "clearly appropriate" where a defendant "has had ample notice of impending judgment by default, but has taken no action whatsoever." *Lawbaugh*, 359 F. Supp. 2d at 422. In *Lawbaugh*, this Court found entry of default judgment appropriate where the defendant, among other things, did not respond to the complaint, the entry of default, or the plaintiff's motion for default judgment. *Id*. at 421-422. Here, Mr. Davis has been similarly unresponsive. He did not file a responsive pleading to the Complaint, as required by Federal Rule of Civil Procedure 12(a)(4)(A). Mr. Davis's assertions that he was not properly served have been considered and rejected as unmeritorious. ECF Nos. 11, 14. Mr. Davis did not respond to the Commission's motion for default judgement, even after he was granted an additional 21 days to respond. ECF Nos. 10, 14. Nor did he respond to the Commission's supplemental filing in support of its motion for default judgment. ECF Nos. 16–18. Entry of default judgment is therefore appropriate. Nevertheless, "[a] defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court." *Securities & Exch. Comm'n* v. *North Star Fin., LLC*, Civil Action No. GJH-15-1339, 2017 WL 5197402, at *2 (D. Md. Nov. 9, 2017) (quotation marks and citation omitted).

---

pursuant to Federal Rule of Civil Procedure 55(b)(2) because the relief it seeks includes equitable relief, in addition to "money damages for a sum certain." ECF No. 10-1 at 4–5.

The Commission therefore may not rely on summary proceedings to enforce the Commission Order. Entry of a default judgment against Mr. Davis requires this Court to make an independent determination that the well-pleaded allegations support Mr. Davis' liability and that the damages in question are "supported by evidence introduced either at a hearing or by affidavit or other records." *Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Adm'rs, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020); *see also Lawbaugh*, 359 F. Supp. 2d at 421-426 (engaging in the Rule 55 default judgment analysis where the Commission alleged, among other claims, a violation of the Investment Company Act of 1940).

    **B.**    **Liability**

As noted, with respect to liability, the Court must consider whether the well-pleaded allegations state a plausible claim. *Frozen Wheels, LLC*, 2024 WL 1132092, at *3. The Commission contends that Mr. Davis violated Sections 206(1) and (2) of the Advisers Act. ECF No. 1 ¶ 1. The Advisers Act is one of several Acts that "govern[s] the registration of securities, the trading of securities, and the activities of investment advisers." *Securities & Exch. Comm'n* v. *Jarkesy*, 603 U.S. 109, 116 (2024); *see also Securities & Exch. Comm'n* v. *Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186-191 (1963) (discussing the history and purpose of the Advisers Act). Both the Investment Company Act and the Advisers Act provide that the Commission may bring an action in the proper United States District Court to enforce compliance with an order issued by the Commission. 15 U.S.C. §§ 80a-41(d), 80b-9(d). Sections 206(1) and (2) of the Adviser's Act provide, in pertinent part, that:

> It shall be unlawful for any investment adviser by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
>
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

15 U.S.C. § 80b-6(1)-(2). To establish a violation under Sections 206(1) and (2) the Commission must show that the defendant (1) is an investment advisor, (2) who engaged in fraudulent activities, and (3) negligently breached the defendant's fiduciary duty by making false and misleading statements or omissions of material fact. *Securities & Exch. Comm'n* v. *Gotchey*, No. 91-1855, 1992 WL 385284, at *2, 981 F.2d 1251 (Table) (4th Cir. Dec. 28, 1992) (citing *Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180).

The Commission has plausibly alleged each required element. First, the Commission alleges that Mr. Davis was the sole owner, operator, and founder of Parrish Group, a now defunct, formerly registered investment advising firm. ECF No. 1 ¶ 7. Second and third, the Commission alleges that Mr. Davis engaged in fraudulent activities through material factual misrepresentations with respect to Parrish Group's operations, employees, portfolio, and other aspects of its purported investment activity. *See*, I.A., *supra*. For example, the Commission alleges that Mr. Davis drafted and used on at least 80 occasions with prospective clients a brochure that contained "multiple misrepresentations," including that "Parrish Group managed over $1 billion in assets," represented clients who were "prominent individuals and entities," had 14 employees, and "falsely named three individuals" as the firm's executive officers. ECF No. 1 ¶¶ 8–11. Upon entry of default, Mr. Davis is deemed to have admitted these allegations.[6] *Moody*, 2019 WL 2494421, at *1. Thus, the SEC has pled a plausible claim for relief under the Sections 206(1) and (2) of the Advisers Act, as the "unchallenged facts constitute a legitimate cause of action." *Frozen Wheels,* 2024 WL 1132092, at *3; 15 U.S.C. § 80b-6(1)-(2).

C. **Relief**

Having found Mr. Davis liable, the remaining issue is the scope of available relief. The Commission seeks: (1) a civil money penalty pursuant to Section 203(i) of the Advisers Act, 15 U.S.C. § 80b-3(i); (2) outstanding interest pursuant to 31 U.S.C. § 3717, until the entry of judgment, and post-judgment interest pursuant to 28 U.S.C. § 1961; and (3) injunctive relief.[7] ECF Nos. 1 at 5; 10-4 at 2–3; 17 at 6, 8. Each category of relief is addressed in turn below.

---

[6] Furthermore, Mr. Davis "voluntarily" signed and "consented to the entry of an Order" in which the Commission found he "willfully violated Sections 206(1) and 206(2) of the Advisers Act" and ordered him to "cease and desist from committing or causing any violations and any future violations." ECF No. 18 at 3, 6.

[7] As the undersigned noted previously, "the relief sought in the Commission's motion for a default judgment appears to differ from what it requested in the Complaint." ECF No. 16 at 4; *compare* ECF No. 1 ¶¶ 14–15 (seeking, among other things, a civil penalty in the amount of

9

      1.      <u>Civil Money Penalty</u>

Among other relief, the Commission asks that this Court order Mr. Davis to pay a third-tier civil money penalty of $184,767. Civil money penalties are a form of monetary relief. *Jarkesy*, 603 U.S. at 123. Unlike money damages, however, civil money penalties are "designed to be punitive" and are not aimed at "restoring the status quo." *Id.* at 124 (internal alteration and citation omitted); *see also Gabelli* v. *Securities & Exch. Comm'n*, 568 U.S. 442, 452 (2013) (observing that civil penalties "are intended to punish, and label defendants wrongdoers").

The Advisers Act establishes three "tiers" of civil monetary penalties to redress violations of those Acts. *Jarkesy*, 603 U.S. at 124; 15 U.S.C. § 80b-9(e). A violation of "a federal securities law or regulation exposes a defendant to a first tier penalty." *Jarkesy*, 603 U.S. at 124; *see also Securities & Exch. Comm'n v. Miller*, Civil Action No. DLB-19-2810, 2024 WL 4534512, at *11 (D. Md. Oct. 21, 2024); 15 U.S.C. § 80b-9(e)(2)(A). A second-tier penalty "may be ordered if the violation involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Jarkesy*, 603 U.S. at 124; *Miller*, 2024 WL 4534512, *11; 15 U.S.C. § 80b-9(e)(2)(B). A third-tier penalty may be ordered for a tier two violation that "resulted in substantial gains to the defendant or losses to another, or created a 'significant risk' of the latter." *Jarkesy*, 603 U.S. at 124; *Miller*, 2024 WL 4534512, at *11; 15 U.S.C. § 80b-9(e)(2)(C). These penalty tiers "condition[ ] the available penalty on the culpability of the defendant and the need for deterrence, not the size of the harm that must be remedied." *Jarkesy*,

---

$184,767) *with* ECF No. 10-1 at 5 (seeking, among other things, disgorgement in the amount of $184,767). Civil money penalties are a distinct remedy from and serve a different purpose to disgorgement. *Securities & Exch. Comm'n* v. *Miller*, Civil Action No. DLB-19-2810, 2024 WL 4534512, at *11 (D. Md. Oct. 21, 2024). Federal Rule of Civil Procedure 54 provides that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Damages are therefore "circumscribed by that which is requested in the complaint." *Select Specialty Hosp. - Quad Cities, Inc.*, 2020 WL 4569521, at *3. In its supplemental filing, the Commission recharacterized the relief sought as "a civil money penalty $184,767 plus outstanding interest." ECF No. 17 at 8. Accordingly, this Report and Recommendation analyzes the requested relief as a civil money penalty.

603 U.S. at 124. Thus, a showing that a victim suffered harm is not required to advance a defendant from one penalty tier to the next. *Id*.

"Each successive tier authorizes a larger monetary sanction." *Id*. As relevant here, a third-tier penalty may be calculated in one of two ways: as a fixed amount multiplied by the number of violations or number of persons defrauded, or as a penalty equal to the defendant's gross pecuniary gain. *Securities & Exch. Comm'n* v. *North Star Fin., LLC*, Civil Action No. GJH-15-1339, 2019 WL 3860321 (D. Md. Aug. 15, 2019), *aff'd sub nom.*, 826 Fed. Appx. 306, 2020 WL 6255243 (4th Cir. 2020); *accord Miller,* 2024 WL 4534512, at *11; *United States Sec. & Exch. Comm'n* v. *Owings Group, LLC*, Civil Action No. RDB-18-2046, 2021 WL 1909606, at *6 (D. Md. May 12, 2021), *aff'd sub nom.*, 43 F.4th 382 (4th Cir. 2022).

Courts consider five factors when assessing a penalty: (1) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition; (2) the egregiousness of defendant's conduct; (3) the degree of the defendant's scienter; (4) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; and (5) whether the defendant's conduct was isolated or recurrent. *Miller*, 2024 WL 4534512, at *11; *Owings Group, LLC*, 2021 WL 1909606, at *6; *see also* 15 U.S.C. § 80b-9(e)(2)(B)-(C).

As to the first factor, the only indication of Mr. Davis's current financial condition is his statement in his motion to vacate default, that he "[does] not have the financial resources" to "retain legal counsel" and he "[has] been facing housing challenges for the past several years." ECF No. 11 at 1–2. As to the second and third factors, Mr. Davis's conduct was egregious and demonstrates a high level of scienter. *See*, I.A., II.B., *supra.* Most notably, Mr. Davis fraudulently represented to prospective clients that Parrish Group was a registered investment adviser that managed over $1 billion in assets; had 14 employees; and provided services to prominent individuals and entities, including a specific prominent business executive, professional athlete, pension fund, and employee health system. ECF No. 1 ¶¶ 8–12. Mr.

11

Davis's violation therefore involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement." *Jarkesy*, 603 U.S. at 124; *see also* 15 U.S.C. § 80b-9(e)(2)(C). As to the fourth factor, the Commission does not identify any substantial losses actually created by Mr. Davis's conduct, but the risk of substantial losses to others that he created is clear. Finally, Mr. Davis's conduct was recurrent because he repeatedly made these false assertions when he presented the brochure "at least 80 times to prospective clients" (ECF No. 1 ¶ 8) and "sent emails that falsely represented that Parrish Group managed $1.4 billion in assets" (*id*. at ¶ 12). Mr. Davis's conduct meets the criteria for a third-tier penalty. *Miller*, 2024 WL 4534512 at *11 (collecting cases).

The Commission has not indicated whether it seeks a penalty on a per-violation basis or for the gross amount of pecuniary gain. ECF Nos. 10, 17; 15 U.S.C. § 80b-9(e)(2)(C). Instead, the Commission cites to Section 203(i) of the Advisers Act, 15 U.S.C. §§ 80b-3(i), to support its contention that Mr. Davis must "pay a maximum inflation-adjusted, third-tier penalty against a natural person of $184,767." ECF No. 17 at 6. This figure was the maximum amount that could have been imposed on a natural person at the time the Commission Order was entered. 15 U.S.C. § 80b-9(e)(2)(C); Securities & Exch. Comm'n, Adjustments to Civil Monetary Penalty Amounts, 83 Fed. Reg. 1396-01, 1397, 2018 WL 352251 (Jan. 11, 2018). The undersigned recommends that the Court asses a third-tier civil money penalty against Mr. Davis in the requested amount of $184,767.[8]

---

[8] If a civil money penalty were to be assessed today, the adjusted for inflation amount is up to $236,451. Securities & Exch. Comm'n, Adjustments to Civil Monetary Penalty Amounts, 90 Fed. Reg. 2767-02, 2769, 2025 WL 70455 (Jan. 13, 2025); *see also* 17 C.F.R. § 201.1001(b) (explaining the process for annual updates to civil money penalty amounts). Mr. Davis should not be penalized by having the civil money penalty assessed against him increased from $184,767 to $236,451 simply because the Commission took several years to file an action to enforce the Commission Order. Accordingly, the undersigned recommends the 2018 civil money penalty amount for a third-tier violation be assessed.

2. <u>Interest</u>

The Commission also seeks "outstanding interest pursuant to 31 U.S.C. § 3717, until the entry of judgment, and post judgment interest pursuant to 28 U.S.C. § 1961." ECF No. 17 at 8. "The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion." *Securities & Exch. Comm'n* v. *First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 (2d Cir. 1996) (quotation marks and citation omitted); *accord Securities & Exch. Comm'n* v. *Sargent*, 329 F.3d 34, 40 (1st Cir. 2003); *Securities & Exch. Comm'n* v. *Marker*, 427 F. Supp. 2d 583, 592 (M.D.N.C. 2006).

Where this Court has granted prejudgment interest to the Commission, the interest has been attached to a disgorgement award, not a civil penalty, and the Commission submitted evidence of the amount of prejudgment interest actually accrued. *E.g.*, *Owings Group, LLC*, 2021 WL 1909606, at *5-6 (awarding prejudgment interest on disgorgement awards where the Commission submitted a declaration that stated the exact amount of the interest per defendant and how the interest was calculated based on the Commission's prejudgment interest calculator); *Securities & Exch. Comm'n* v. *Giordano*, Civil Action No. RDB-14-3598, 2017 WL 79938, at *2 (D. Md. Jan. 6, 2017) (awarding $16,616.49 in prejudgment interest on a disgorgement award of $69,300 where the Commission submitted a sworn affidavit outlining the appropriate amount of prejudgment interest that "detail[ed] the calculation of this figure"). This Court has denied a request for prejudgment interest without prejudice to renew where the record is insufficient because, "[w]ithout more information, prejudgment interest cannot be fairly awarded." *Concentric Methods, LLC* v. *Cillian Techs., LLC*, Civil Action No. DKC-11-1130, 2011 WL 6180143, at *2 (D. Md. Dec. 12, 2011) (denying prejudgment interest award where the record is "devoid of any facts" to determine the date that prejudgment interest begins to accrue); *see also Miller*, 2024 WL 4534512 at *13.

Here, the Commission has not provided an exact amount of prejudgment interest requested, nor has it proffered any evidentiary support for how this amount would be calculated, or the date upon which it alleges prejudgment interest began to accrue. *See generally* ECF Nos. 1, 10, 17. The undersigned previously issued a Memorandum Order that noted that the SEC's motion for default judgment was "devoid of any discussion of the factual and legal bases for the post-judgment interest and various categories of injunctive relief outline in its proposed order." ECF No. 16 at 4. This same Memorandum Order directed the Commission to "provide support for its calculation of damages" and specifically warned that failure to provide adequate support for its requested relief "may result in denial of the motion or a recommendation that the Court award less than the full measure of relief sought." *Id.* at 5. Nevertheless, even with the benefit of these advisements and two opportunities to demonstrate why it is entitled to prejudgment interest, the Commission has failed to do so. Accordingly, the undersigned recommends that the Commission's request for prejudgment interest be denied.

Post-judgment interest "shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Based on this statutory command, this Court has found that an award of post-judgment interest is unnecessary. *E.g.*, *Concentric Methods, LLC*, 2011 WL 6180143, at *2 (finding that "an award of post-judgment interest need not be specifically granted because a plaintiff is entitled to recover such interest by operation of law"); *accord United States* v. *Akoto*, Civil Action No. TDC-25-157, 2025 WL 1702951, at *8 (D. Md. June 18, 2025) (Quereshi, J.), *report and recommendation adopted*, 2025 WL 2453432 (D. Md. July 21, 2025); *Developers Sur. & Indem. Co.* v. *Kiotsekoglou*, Civil Action No. DKC-20-223, 2021 WL 3187988, at *8 (D. Md. July 28, 2021); *United Cmty. Bank, Inc.* v. *IAAAA, Inc.*, Civil Action No. GJH-20-594, 2021 WL 2685362, at *7 (D. Md. June 29, 2021). Accordingly, the undersigned recommends that the Commission's request for an award of post-judgment interest be denied.

3. <u>Permanent Injunction</u>

Finally, the Commission asks that this Court order Mr. Davis to "cease and desist from committing or causing any violations and any future violations of Sections 206(1) and 206(2) of the Advisers Act" (ECF No. 17-2 at 2), and that Mr. Davis be "barred from association with any investment adviser . . . and prohibited from serving or acting as an employee, officer, director, member of an advisory board, investment adviser or depositor of, or principal underwriter for, a registered investment company or affiliated person of such investment adviser, depositor, or principal underwriter" (*id*. at 2–3).

"[T]he Court must issue an injunction if the [Commission] demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *Securities & Exch. Comm'n* v. *Chapman*, 826 F. Supp. 2d 847, 857 (D. Md. 2011) (internal quotation omitted). "Where a violation of securities law has been found, a court is vested with broad discretion in deciding whether to grant injunctive relief." *Lawbaugh*, 359 F. Supp. 2d at 424. The "key question" in deciding whether to grant such injunctive relief is whether "there is a reasonable likelihood that the wrong will be repeated." *Miller*, 2024 WL 4534512, at *7 (internal quotations omitted).

A court may bar a defendant from serving as an officer or director of a public company in the future if the defendant's "conduct demonstrates unfitness to serve as an officer or director." 15 U.S.C. § 78u(d)(2). To determine whether and for how long a bar is warranted, courts consider: "(1) the 'egregiousness' of the underlying securities law violation; (2) the defendant's 'repeat offender' status; (3) the defendant's 'role' or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Miller*, 2024 WL 4534512, at *4 (quoting *Lawbaugh*, 359 F. Supp. 2d at 426); *accord Moody*, 2019 WL 2494421, at *2; *Chapman*, 826 F. Supp. 2d at 858. These factors "are not the only factors that a court may consider" but are

15

instructive in "guiding the court's substantial discretion." *Miller*, 2024 WL 4534512, at *4 (internal quotation marks and citation omitted).

As to the first and fourth factors, Mr. Davis's conduct was egregious and involved a high degree of scienter. *See*, II.C.1., *supra*. As to the third factor, Mr. Davis was directly responsible for the fraud because he was the owner and founder of Parrish Group, created the brochure, and used the brochure with prospective clients. *See*, I.A, *supra*. Thus, the first, third, and fourth factors weigh in favor of granting the Commission's requested injunctive relief. Despite having the opportunity to supplement its motion for default judgment, the Commission has not provided any information or argument related to the second, fifth, or sixth factors.

Notably, the case law repeatedly emphasizes the purpose of an injunction is to prevent future violations of securities laws. *Lawbaugh*, 359 F. Supp. 2d at 424 ("The critical question for a district court in deciding whether to issue a permanent injunction in view of past violations is whether there is a reasonable likelihood that the wrong will be repeated.") (internal quotations omitted); *accord Miller*, 2024 WL 4534512, at *5; *Chapman*, 826 F. Supp. 2d at 857; *Securities & Exch. Comm'n* v. *Resnick*, 604 F. Supp. 2d 773, 781 (D. Md. 2009). For example, in *Chapman*, the Court granted an injunction where the defendant "apparently intend[ed] to continue to serve as a director or officer of public companies" and would therefore have "future opportunities to repeat these violations." 826 F. Supp. 2d at 858. Similarly, in *Lawbaugh*, the Court granted an injunction where the defendant repeatedly, and over several years, "altered and falsified official documents, contrived phony account statements for individual investors, and created sham corporations to accept payments." 359 F. Supp. 2d at 425. The *Lawbaugh* Court found that the defendant had not recognized the wrongful nature of his conduct, nor had he provided any assurances against future violations, and there was therefore "nothing to indicate that this behavior will not recur, and much to suggest that it may." *Id.* at 424.

16

By contrast, here, Mr. Davis signed an offer of settlement in which he agreed to the Commission's findings that he "willfully violated" Sections 206(1) and (2) and agreed to "cease and desist future violations" of the Advisers Act. ECF No. 18 at 3. Mr. Davis tendered his offer of settlement on May 1, 2019, and the agreement itself related to conduct that occurred between July 2016 and November 2017—nearly a decade ago. ECF Nos. 1 ¶¶ 1, 8; 18 at 6. There is no suggestion that Mr. Davis continues to work in the securities field. In sum, the Commission has not presented any evidence that Mr. Davis has committed securities violations since 2017 or that he is likely to commit future securities violations. *See generally* ECF Nos. 1, 10, 17.

The Commission relies on a 2001 Securities and Exchange Commission Release Notice for the proposition that "in the ordinary case and absent evidence to the contrary, a finding of past violation raises a sufficient risk of future violation." ECF No. 17 at 7 (citing *Securities & Exch. Comm'n Release Notice*, Release No. 1374, 2001 WL 223378, at *6 (Mar. 8, 2001)). This release notice is not binding precedent and does not stand for the narrow proposition asserted. The sentence immediately following the Commission's selected quotation explains that "[t]his does not mean, however, that even in the ordinary case issuance of a cease-and-desist order is *automatic* on a finding of past violation." *Id.* (emphasis added). It further explains that in addition to "the risk of future violations . . . traditional factors . . . , including the seriousness of the violations, the [defendant's] failure to appreciate that seriousness, and the remedial function to be served by the cease-and-desist order, together with the question of the level of risk of future violations" will be considered. *Id.* (alteration in original) (internal quotations omitted).

The Commission has already enjoyed two opportunities to demonstrate "a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future." *Chapman*, 826 F. Supp. 2d at 857 (internal quotations omitted). Yet, it has failed to make any showing that Mr. Davis is likely to commit future violations of securities laws. Even where a first-time offender's conduct is "egregious" and the defendant expressed no remorse,

17

this Court has previously declined to order a lifetime bar on serving as an officer and director of a public company. *Miller*, 2024 WL 4534512, at *6 (finding that a ten-year bar "'should be sufficient to deter any future misconduct and to impress upon [Miller] the gravity of his violations'") (quoting *Johnston*, 368 F. Supp. 3d at 253) (alteration in original). Here, the record does not reflect, and the Commission does not allege, that Mr. Davis has reoffended, nor does the Commission argue that he is likely to reoffend. The undersigned therefore recommends that the Commission's request for injunctive relief be denied.

## III.  CONCLUSION

In light of the foregoing, I respectfully recommend that the Court grant in part and deny in part the Commission's motion for default judgment. I recommend the Court assess a third-tier civil money penalty against Mr. Davis in the amount of $184,767 and deny the Commission's requests for pre- and post-judgment interest and injunctive relief.

The Clerk is directed to mail a copy of this Report and Recommendation to Defendant Daryl M. Davis. Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5.b.

Date:  February 27, 2026                                    /s/
                                                          Erin Aslan
                                                          United States Magistrate Judge